W. Bryden *against* J. Bryden.

THIS was an action of *assumpsit* brought against the defendant, as endorser of a bill of exchange. The cause was tried before the *Chief Justice*, at the *New-York* sittings, in *November,* 1813.

The bill of exchange was dated at *Baltimore,* the 23d *July,* 1799, drawn by *C. F. C. Busche* on *J. A.* and *D. H. Rucker,* Esqs. of *London,* for 120 pounds sterling, at sixty days' sight, in favour of *William Magruder,* who endorsed it to the defendant, who endorsed it to the plaintiff. The first of the set of exchange which had been protested, was lost with the vessel in which it was sent, in its passage from *London* to *Baltimore,* in the autumn of the year 1799.

It appeared by a copy of the protest for non-acceptance, taken from the books of the notary, in *July,* 1804, by another notary, (the notary who made the protest being since dead,) that the bill was regularly protested for non-acceptance the 14th *September,* 1799; and it also appeared by a copy of the protest for non-payment, that it had been regularly protested for non-payment on the 16th *November,* 1799.

To prove notice to the defendant, as endorser of the bill, of the *non-acceptance* of it, the plaintiff's counsel read the deposition of *William Taylor,* residing in *Baltimore,* taken under a commission issued in the cause. The witness stated that he received the bill in question from *W. Bryden,* the plaintiff, in payment of a debt, and transmitted it to his correspondent in *London.* That some time in the month of *November,* 1799, the witness received a letter from his correspondent advising him that the bill had not been accepted; and within three days after the receipt of the letter, the witness himself gave verbal notice thereof to the defendant, who resided at the *Fountain Inn* tavern in *Baltimore;* that the witness also directed *William O. Payne,* who was then a clerk in his employment, to give notice to the defendant of the non-acceptance of the bill, and the defendant afterwards acknowledged to the witness that he had received such notice from his clerk; that his clerk had been dead for several years, and that the witness was the holder of the bill at the time the notice of the non-acceptance thereof

*What is reasonable notice of the dishonour of a bill is a mixed question of law and fact, but when the facts are ascertained, it becomes purely a question of law.*

*Where the holder and endorser of a bill of exchange both resided in the same city, proof of notice to the endorser, within three days after advice of the dishonour of the bill, was held not to be sufficient.*

NEW-YORK, was so given to the defendant; the witness did not recollect
May, 1814. whether the notice given by *Payne* was verbal or written, but
~~~~~~~~~
BRYDEN      the purport of it was to inform the defendant of the non-accept-
v.          ance of the bill, and that the witness, as holder, looked to him
BRYDEN.     for the payment of it.

On this evidence, the defendant's counsel moved for a non-
suit, on the ground that due notice of the non-acceptance of the
bill had not been proved, but the motion was overruled by the
*Chief Justice*, who, in his charge to the jury, stated that it was
for them to decide, from the testimony and the circumstances of
the case, whether or not there had been reasonable and due
diligence in giving notice to the defendant of the dishonour of
the bill; and that if they should be of that opinion, and to which
opinion he inclined, the plaintiff was entitled to recover. The
jury found a verdict for the plaintiff.

A motion was made to set aside the verdict, and for a new trial.

*T. V. W. Graham*, for the defendant.

*Johnson*, contra. He cited *Chitty on Bills*, (2d edit.) 162—
166. 12 *East*, 433. 1 *Term Rep.* 168. *Doug.* 514.

SPENCER, J. delivered the opinion of the court. *Taylor*, the
holder of the bill, and the defendant, the endorser, both resided
in the city of *Baltimore*. The only evidence of the non-accept-
ance of the bill is the deposition of *Taylor*, who states that
*within three days* after the receipt of the letter advising him of
the non-acceptance of the bill, he gave verbal notice thereof to
the defendant. He also directed *Payne*, his clerk, who is since
dead, to give notice to the defendant, who afterwards acknow-
ledged to *Taylor* that he had received such notice from *Payne*;
but *when Payne* gave the notice does not appear. It is pre-
sumable, however, that it was after the notice given by *Taylor*.

The question then is, whether notice to an endorser, given
*within three days* after advice is received of the dishonour of a
bill, where the parties reside in the same place, is reasonable
notice. What is a reasonable notice in such case, is a mixed
question of law and fact; but when the facts are ascertained, it
becomes purely a question of law. This results from the neces-
sity of having some fixed legal standard, by which men may not
only know the law, but be protected by it. This principle is

NEW-YORK,
May, 1814.

settled in the *English* courts. (*Kyd on Bills*, (3d edit.) 127. and the cases cited.) In the case of *Tindall* v. *Brown*, (1 *Term Rep.* 167.) a bill was payable on the 5th *October*. The holder called on that day, and on the 6th and 7th, on the acceptor. and was amused by fair promises. On the 7th *October* he gave notice to the endorser, the parties living within 20 minutes' walk. The court held the notice too late, and, to enforce the law, granted a third trial. We have always required the earliest notice of the protest of a bill for non-acceptance, or non-payment.

The *Chief Justice* submitted the question of law and fact to the jury, with an intimation in favour of the plaintiff's right to recover, when, in my judgment, he ought to have nonsuited the plaintiff, for not proving notice to the defendant, within a reasonable time. The transaction, it is true, is stale, and the defendant has not pleaded the statute of limitations; but the plaintiff can derive no benefit from these considerations. This *laches* ought not to work any prejudice to the defendant, or create any presumptions against him. There must be a new trial, and the costs are to abide the event of the suit.

New trial granted.