## BERRY *v.* MARSHALL, Administrator.

Subsequently to a judgment against *A.*, a statute was enacted directing the debts of persons dying insolvent to be paid pro rata.  *A.* afterwards died insolvent.  *Held*, that the judgment had no priority.

*Thursday,*
*May 5.*

ERROR to the *Jackson* Circuit Court.

HOLMAN, J.—*Berry* recovered judgment against *Craig* in *October*, 1820.   *Craig* died in *June*, 1822; and administration of his estate was granted to *Marshall*, against whom the judgment was revived by scire facias.  *Marshall*, finding the estate insolvent, filed a bill in chancery in the Circuit Court, setting out the amount of the real and personal estate of *Craig*, and of the demands against it, so far as he was able to ascertain them, with a prayer that all the creditors be compelled to accept of a proportionate part of the assets, and that all proceedings at law against him as administrator be enjoined.  *Berry* demurred to

the bill. The demurrer was overruled; and he declining to answer, a decree was made against him, enjoining him from proceeding at law on his judgment, in order to the final adjustment of all the claims in the manner proposed in the bill.

*Berry* insists on the priority of his claim to subsequent judgments, and its superiority over debts of an inferior dignity: and as the subject stood previously to the act of assembly, amending the act *regulating* the settlement of intestate estates, his claim would be legal; but that act seems intended to abolish all distinction between the debts of the deceased when the estate is insolvent. It directs the administrator or executor to give notice, requiring all persons having claims of any description against the estate, to exhibit their demands within twelve months, to the intent that the creditors of the deceased may be secured in their demands entirely; or if the estate should prove insolvent, that they may receive their proportionate dividends of such estate in proportion to their respective claims. See stat. 1821, p. 140. If this act was intended to place all creditors on an equal footing, without any regard to the dignity of their claims, the prayer of the bill was proper, and the decree of the Court correct; and such appears to have been the intention of the legislature, although the language they have used is not so explicit as that made use of in the Rev. Code in fixing the law on the same subject (1). It is true, that the judgment was in force before the passage of the act, and the act could not have a retrospective effect so as to suspend or divest any lien the judgment might have on the lands of *Craig.* But this lien continued only during the life of *Craig.* For before the death of *Craig* this act was in force, and directed the manner in which his estate should be distributed. From *October,* 1820, until *June,* 1822, *Berry* had an indisputable right to proceed on his judgment: but after *Craig* died and his estate was declared insolvent, a new order of things took place, and *Berry* lost all the advantages arising from his judgment except that of having his claim established; and was therefore properly enjoined, and placed on a level with other creditors.

*Per Curiam.*—The decree is affirmed with costs.

*Moore,* for the plaintiff.

*Nelson,* for the defendant.

(1) Stat. 1823, pp. 319, 320;—1828, p. 37.