Roberts *v.* Masters.

---

ROBERTS *v.* MASTERS.

PROMISSORY NOTE.—*Indorsement.*— *Pleading.* — Complaint alleging that A. made his promissory note to B., and that B.; at the instance and request of A., then placed his name on the note, and thereby agreed to, and did, become a maker of said note and surety for A., and then delivered the note to A., who then brought the same to the plaintiff, and the plaintiff then loaned A. the money thereon, and further averring that at the time of the indorsement it was the intention and design of B., and he then agreed, to become a maker of the note, and assume the same liability thereon as A., and that the note was made to give A. credit with the plaintiff, and to enable him to borrow money of the plaintiff.

*Held,* that the complaint was bad.

SAME.—*Evidence.*—Where a promissory note is indorsed by the payee, whose name is followed upon the back of the note by other names in blank, parol evidence will not be permitted to vary the legal effect of the indorsements thus appearing on the note. But where a party places his name on the back of a note, creating a liability in favor of the payee, the presumption is that he intended to assume the liability of an indorser, and *nothing* more. This presumption, however, may be controlled by parol evidence showing that he intended to assume the liability of a maker, in which case he will be regarded as a joint maker.

JUDICIAL NOTICE.—*Term of Court.*—The Supreme Court will take judicial notice of the commencement of terms of courts of this State.

PROMISSORY NOTE.—*Assignee.*—*Excuse for not Suing Maker.*—To excuse the assignee of a promissory note for not suing the maker, it must be alleged and proved that the maker was openly and notoriously insolvent at the time when judgment might have been obtained by the use of due diligence.

SAME.—Before the assignee of a promissory note can recover of the assignor, he must aver and prove that he has used due diligence, by process of law, to collect the note of the maker, or show that by the use of such diligence no part of the debt could have been collected.

SAME.—The facts relied upon to show that due diligence has been used must be set out. Whether due diligence has been used in such case is a question of law for the court to determine from the facts of the case.

SAME.—To constitute due diligence to collect by process of law, the action must be brought against the maker in the first term of the court having jurisdiction, when there is time, between the maturity of the note and the commencement of such term, to obtain process.

SAME.—This rule applies, though such action be thereby required to be brought the day next after the maturity of the note, unless it is shown that the action could not have been commenced and service obtained.

SAME.—That the maker of the note was possessed of large and valuable property, and was reputed to be entirely solvent at the time suit should have been commenced, is no excuse for not suing.

APPEAL from the Franklin Circuit Court.

BUSKIRK, J.—The only questions presented by the record for our decision are, whether the court erred in sustaining demurrers to the first, second, third, and fifth paragraphs of the complaint.

Francis M. Stone, on the 22d day of June, 1868, executed his note payable to Jacob H. Masters, four months after date, for the sum of twelve hundred dollars. Masters, the payee of the note, indorsed and delivered the same to John Roberts, the plaintiff below and appellant here. The action was

Roberts *v*. Masters.

brought against the maker and assignor. Stone, the maker, pleaded his discharge in bankruptcy, and thus went out of the case. A demurrer was sustained to the fourth paragraph of the complaint, but there was no exception to such ruling.

The first paragraph of the complaint alleges the execution of the note by Stone to Masters, and then avers that "Masters then and there placed his name on said note, at the instance and request of Stone, and thereby and then agreed to and did become a maker of said note and surety for said Stone, and at the same time delivered the same to the said Stone, who then brought the same to the plaintiff, and for and on which the plaintiff then loaned and furnished to said Stone the money, to wit, twelve hundred dollars, and said note was so given by said defendants to plaintiff for money loaned by plaintiff to Stone; that it was, at the time of its indorsement, the intention and design of said Masters, and he then agreed, to become a maker of said note, and to assume the same liability thereon as the said Stone, and the same was so executed and delivered to the said Stone, for the purpose of giving him credit with said plaintiff, and to enable said Stone to borrow said twelve hundred dollars from plaintiff; which note remains due and unpaid," etc.

The first paragraph of the complaint is clearly bad. It has been held by this court, that "where a promissory note is indorsed by the payee, whose name is followed upon the back of the note by other names in blank, parol evidence will not be permitted to vary the legal effect of the indorsements thus appearing on the note." But "where a party places his name on the back of the note, creating a liability in favor of the payee, the presumption is that he intends to assume the liability of an indorser, and nothing more. This presumption, however, may be controlled by parol evidence, showing that he intended to assume the liability of a maker, in which case he will be regarded as a joint maker." *Vore* v. *Hurst*, 13 Ind. 551; *Sill* v. *Leslie*, 16 Ind. 236; *Snyder* v. *Oatman*, 16 Ind. 265; *McGaughey* v. *Elliott*, 18 Ind. 121; *Drake* v. *Markle*, 21 Ind. 433; *Dale* v. *Moffitt*, 22 Ind. 113;

*McClintic's Adm'r* v. *Cory*, 22 Ind. 170; *Oiler* v. *Gard*, 23 Ind. 212; *Campbell* v. *Robbins*, 29 Ind. 271; *The Richmond, etc., Co.* v. *Farquar*, 8 Blackf. 89; *Russell* v. *Branham*, 8 Blackf. 277; *Bliss* v. *Burnes*, McCahon (Kansas), 91.

The second paragraph of the complaint alleged the execution of the note and its indorsement, and then averred that Stone became, on the 18th day of November, 1868, openly and notoriously insolvent, and continued so, and that a judgment against him from that time to this would have been unavailing; that after the maturity of said note the plaintiff made use of due diligence to collect the said note from said Stone, but by reason of his insolvency, he was unable to collect the same from said Stone.

The above paragraph of the complaint attempts to set up two inconsistent causes of action. In the first place, the insolvency of the maker is relied upon as an excuse for not using due diligence to collect the note; and in the second place, it is averred that the plaintiff used due diligence to collect such note, but was prevented by the insolvency of the maker. The paragraph neither contains a sufficient excuse for not suing, nor sufficient averments showing that due diligence had been used. The note was made a part of the paragraph, and it was thus shown that it became due on the 22d day of October, 1868. It is alleged that the maker became insolvent on the 18th day of November, 1868. An allegation of the insolvency of the maker on the 18th of November, 1868, constitutes no valid excuse for not suing on the 22d day of October, 1868. There is no allegation that no court was held between the 22d day of October and the 18th day of November, 1868. Besides, we take judicial notice of the fact that a term of the common pleas court of said county commenced on Monday, the 2d day of November, 1868, and that process might have been served after the maturity of the note. To constitute a valid excuse for not suing, it must be alleged and proved that the maker was "openly and notoriously" insolvent at the time when judgment might have been obtained by the use of due diligence.

The principle upon which a party is excused from suing the maker is, that such suit would have been entirely unavailable at the time when the law made it the duty of the assignee to sue. *Reynolds* v. *Jones*, 19 Ind. 123.

It is provided by statute that the assignee, having used due diligence, shall have his action against any immediate or remote indorser. Sec. 4, 2 G. & H. 658.

Before the plaintiff could recover in this action, he was required to aver and prove that he had used due diligence, by process of law, to collect the note from the maker, or show sufficient excuse for not using such due diligence. Whether due diligence had been used, was a question of law for the court to determine from the particular facts of the case. The facts constituting due diligence must be set out, so that the court may determine whether such diligence has in fact been used. *Hanna* v. *Pegg*, 1 Blackf. 181; *Tindal* v. *Brown*, 1 T. R. 167; *Bryden* v. *Bryden*, 11 Johns. 187.

The facts showing that due diligence had been used were not set out, which rendered the paragraph bad.

The plaintiff, in the third paragraph, alleges the execution and assignment of the note, and then avers that the note became due on the 22d day of October, 1868; that at that time, and up to the commencement of this suit, the plaintiff and both of the defendants were resident citizens of the county of Franklin; that the only courts of said state having competent jurisdiction of a suit on said note against said defendants are the courts of common pleas and circuit court of said county; that the first term of said common pleas court, after the maturity of said note, convened on Monday, the 2d day of November, 1868; that the last day for process in said court, to be in time for said November term, 1868, was Friday, the 23d day of October, 1868; that the next term of any court having jurisdiction of the suit on said note and said parties, and in which a suit thereon might be maintained, was the February term, 1869, in which this suit was instituted; that on the 18th day of November,

1868, said Stone became openly and notoriously insolvent, and has continued so to this time, and since that time a suit against him, or judgment rendered against him, would have been entirely unavailing and worthless; wherefore, etc.

The fifth paragraph of the complaint, which was filed at the February term, 1869, was the same as the third, above set out, but in addition to the matters therein alleged contained the following averments: "That at the time of the maturity of the said note, and on the last day for process in the said common pleas court, and up to November 18th, 1868, said Stone was doing a large business in said county, carrying on, managing, and owning a large paper-mill in said county that was in full operation and daily manufacturing a large quantity of paper; that at that time his financial credit, standing, and reputation in said county was good; that he had, up to that time, promptly met his bank and other paper and liabilities in said county; that his reputation there was that of a solvent man, entirely able to pay all his debts and liabilities, and was without financial embarrassment; that on said 23d day of October, 1868, said plaintiff had no reason to believe or suspect, and did not suspect or believe, that said Stone was not entirely solvent and in good circumstances and in good standing; that afterward, to wit, on the 18th day of November, 1868, said Stone became openly and notoriously insolvent, and has continued so to this time, and on that day filed his petition in bankruptcy in the United States District Court for the district of Indiana, which said proceedings are still pending and undisposed of and undetermined; that on said 18th day of November, 1868, said Stone became openly and notoriously insolvent, as before alleged, and that any suit since said time would have been unavailing; wherefore," etc.

The third paragraph of the complaint presents the naked, bald question of whether the plaintiff used due diligence to collect the note from the maker. The case, as made by such paragraph, is this: The note matured on the 22d day of October, 1868; the first term of the common pleas court,

after the maturity of the note, commenced on the first Monday of November, 1868, and the first term of the circuit court commenced on the 20th day of February, 1869. To obtain service of the summons in the first term of the common pleas court, the action had to be commenced on the 23d day of October, 1868, the day after the maturity of the note. The suit was not brought in that court. Did the failure of the plaintiff to sue in the first court amount to such want of diligence as to release the assignor from his liability upon the assignment?

The long and firmly settled rule in this State is, that the assignee must either show that he has used due diligence to collect the note from the maker by due process of law, or that by the use of such diligence no part of the debt could have been collected. There is an apparent conflict in the decisions of this court as to what will amount to the use of due diligence; but a careful examination of the adjudged cases will show that there is no real conflict as to the time when the action must be brought, but there is conflict as to due diligence in taking out execution after the rendition of the judgment. There is a uniform and unbroken line of decisions, extending from 1 Blackf. to 30 Ind., holding that the action must be brought in the first term of court, when there is time between the maturity of the note and the commencement of such term of court to obtain service of process in time for such court, which convenes after the maturity of the note. *Odam* v. *Beard*, 1 Blackf. 191; *Merriman* v. *Maple*, 2 Blackf. 350; *Kelsey* v. *Ross*, 6 Blackf. 536; *Dorsey* v. *Hadlock*, 7 Blackf. 113; *Spears* v. *Clark*, 7 Blackf. 283; *Macy* v. *Hollingsworth*, 7 Blackf. 349; *Clark* v. *Spears*, 8 Blackf. 302; *Watson* v. *Robinson*, 8 Blackf. 386; *Black* v. *Wilson*, 7 Blackf. 532; *Herald* v. *Scott*, 2 Ind. 55; *Spears* v. *Clark*, 3 Ind. 296; *Zekind* v. *Newkirk*, 12 Ind. 544; *Craft* v. *Dodd*, 15 Ind. 380; *Miller* v. *Deaver*, 30 Ind. 371.

The rule that the action must be brought in the first court which meets after the maturity of the note, subject to the above qualification, having jurisdiction of the action and the

person of the defendant, is fixed and certain, and parties can have no trouble in understanding it. The rule has been too long and closely adhered to to be changed now to obviate any real or apparent hardship. In the case in judgment, the plaintiff was required to bring his action on the day next after the maturity of the note. This seems to be a very rigid rule. But a delay of one day was a delay of five months, for the circuit court did not meet for that length of time. Besides, it plainly appears that had the plaintiff brought his action in the common pleas court, he would have made the debt from the maker, for he did not become insolvent until the 18th day of November, 1868. The plaintiff alone had the right to sue, and the law made it his duty to sue. The rule is not so inflexible that no excuse can be shown for not suing in the first term, but there was no such showing made in the case under consideration. It is shown in the third paragraph that the maker and assignee both resided in Franklin county, but it is not shown how far they lived apart, or how far either of them lived from the county seat. There is nothing to show that the plaintiff might not have commenced his action and had process served on the 23d day of October, 1868, and in the absence of such showing, we are bound to indulge the presumption that such might have been the case, as every pleading is to be construed more strongly against the pleader than his adversary.

We think the court committed no error in sustaining the demurrer to the third paragraph of the complaint.

The excuse given in the fifth paragraph of the complaint for not suing is, that the maker of the note was possessed of large and valuable property, and was reputed to be entirely solvent up to the 18th day of November, 1868. This is a novel and unheard of excuse, and in our judgment cannot be sustained, either on principle or by authority. The principle is well settled, that the assignee and holder of a promissory note must either use due diligence by suit, or show that no part of the debt could have been made if suit had been brought. It is shown by the fifth paragraph of the

complaint that the whole debt could have been made if suit had been brought in the first court. The recognition of such a doctrine would unsettle and overturn the whole law upon the subject. Under such a doctrine there could be no want of due diligence as long as the maker remained solvent; and instead of the assignee being required to sue because the suit would be available, he would only be required to sue when the suit would be wholly unavailable. We cannot approve such a doctrine. There was no error in sustaining the demurrer to the fifth paragraph of the complaint.

The judgment is affirmed, with costs.

*C. C. Binkley*, for appellant.

*W. H. Bracken, T. B. Adams*, and *F. Berry*, for appellee.